# 18-2225-cr

United States Court of Appeals
For the Second Circuit

_____

Docket No. 18-2225

_____

UNITED STATES OF AMERICA,

*Appellee,*

-against-

WILLIAM MINGO,

*Defendant-Appellant.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANT-APPELLANT WILLIAM MINGO**

Federal Defenders of New York, Inc.
Appeals Bureau
52 Duane Street, 10th Floor
New York, New York 10007
(212) 417-8742
allegra_glashausser@fd.org

*Counsel for Defendant-Appellant*
*William Mingo*

Allegra Glashausser
*Of Counsel*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iii

Statement of Jurisdiction ........................................................................................ 1

Questions Presented ............................................................................................... 2

Statement of the Case ............................................................................................ 2

    Introduction ......................................................................................................... 2

    Motion to dismiss .............................................................................................. 3

    Conditional guilty plea and sentencing ............................................................. 6

Summary of Argument ........................................................................................... 8

Argument ............................................................................................................... 10

Point I

If Gundy strikes down 34 U.S.C. § 20913(d), this Court should reverse Mr. Mingo's
conviction and remand for dismissal of the charging instrument. .............................. 10

    A.    Standard of review ............................................................................... 10

    B.    If Gundy strikes down 34 U.S.C. § 20913(d), Mr. Mingo's conviction should be
         reversed .................................................................................................. 10

Point II

34 U.S.C. § 16911(5)(A)(iv) violates Art. I, § 1 of the Constitution and the non-
delegation doctrine ................................................................................................ 12

Point III

By failing to follow notice and comment procedures, the Secretary of Defense passed Enclosure 27 in violation of the Administrative Procedure Act....................................17

Conclusion..........................................................................................................22

# TABLE OF AUTHORITIES

Cases

*A.L.A. Schechter Poultry Corp. v. United States*,
 295 U.S. 495 (1935) ................................................................. 15

*Ameron, Inc. v. U.S. Army Corps of Eng'rs*,
 809 F.2d 979 (3d Cir. 1986) ..................................................... 13

*City Club of New York v. United States Army Corps of Eng'rs*,
 246 F. Supp. 3d 860 ................................................................. 21

*City of New York v. Permanent Mission of India*,
 618 F.3d 172 (2d Cir. 2010) ..................................................... 18

*Doe v. Rumsfeld*,
 297 F. Supp. 2d 119 (D.D.C. 2003) ......................................... 21

*Griffith v. Kentucky*,
 479 U.S. 314 (1987) ................................................................. 10

*Gundy v. United States*,
 138 S. Ct. 1260 (Mar. 5, 2018) ............................................... 1, 2

*Harper v. Va. Dep't of Taxation*,
 509 U.S. 86 (1993) ................................................................... 10

*Heartland Reg'l Med. Ctr. v. Sebelius*,
 566 F.3d 193 (D.C. Cir. 2009) ................................................. 17

*Indep. Guard Ass'n of Nevada, Local No. 1 v. O'Leary on Behalf of U.S. Dep't of Energy*,
 57 F.3d 766 (9th Cir. 1994) ...................................... 4, 18, 19, 20

*J.W. Hampton, Jr., & Co. v. United States*,
 276 U.S. 394 (1928) ................................................................... 7

*Mistretta v. United States*,
 488 U.S. 361 (1989) ................................................................... 7

*Pan. Ref. Co. v. Ryan*,
 293 U.S. 388 (1935) ................................................................. 14

*Reynolds Metals Co. v. Rumsfeld,*
   564 F.2d 663 (4th Cir. 1977) ......................................................... 16

*Reynolds v. United States,*
   565 U.S. 432 (2012) ...................................................................... 7

*Turner v. Phillips,*
   2009 WL 692195 (N.D.W. Va. Jan. 12, 2009) ..............................16, 17, 18

*United States v. Caver,*
   41 M.J. 556 (C.C.A. 1994) ............................................................ 14

*United States v. Cooper,*
   750 F.3d 263 (3d Cir. 2014) .......................................................... 15

*United States v. FMC Corp.,*
   717 F.2d 775 (3d Cir. 1983) .......................................................... 13

*United States v. Folkes,*
   622 F.3d 152 (2d Cir. 2010) .......................................................... 10

*United States v. Garcia,*
   587 F.3d 509 (2d Cir. 2009) .......................................................... 11

*United States v. Guzman,*
   591 F.3d 83 (2d Cir. 2010) ......................................................... 2, 4

*United States v. Moore,*
   43 F.3d 568 (11th Cir. 1994) ......................................................... 15

*United States v. Murphy,*
   979 F.2d 287 (2d Cir. 1992) ........................................................... 9

*United States v. Nichols,*
   784 F.3d 666 (10th Cir. 2015) ........................................................ 12

*United States v. Olano,*
   507 U.S. 725 (1993) ................................................................ 10, 11

*United States v. Pettus,*
   303 F.3d 480 (2d Cir. 2002) ........................................................... 9

*United States v. Ross,*
   848 F.3d 1129 (D.C. Cir. 2017) ...................................................17, 21

*United States v. Sherman*,
    784 F. Supp. 2d 618 (W.D.Va 2011) ............................................................. 13

*United States v. Stevens*,
    578 F. Supp. 2d 172 (D. Me. 2008) ............................................................... 6

*United States v. Torrance*,
    72 M.J. 607 (A.F. Ct. Crim. App. 2013) ....................................................... 13

*United States v. Ventura-Melendez*,
    321 F.3d 230 (1st Cir. 2003) ................................................................ 4, 5, 19

*White v. Shalala*,
    7 F.3d 296 (2d Cir. 1993) ....................................................................... 16, 18

*Zhang v. Slattery*,
    55 F.3d 732 (2d Cir 1995) ............................................................................ 4

Statutes

5 U.S.C. § 551 ............................................................................................ 17, 18, 21

5 U.S.C. § 553 .............................................................................................. 3, 16, 19

10 U.S.C. § 951 ................................................................................................. 13, 14

18 U.S.C. § 2250 ..................................................................................................... 1

18 U.S.C. § 3231 ..................................................................................................... 1

18 U.S.C. § 3742(a) ................................................................................................ 1

28 U.S.C. § 1291 ..................................................................................................... 1

34 U.S.C. § 16911(5)(A)(iv) ............................................................................ 1, 11, 12

34 U.S.C. § 20913(d) ..................................................................................... passim

Other Authorities

*Military Commissions & Administrative Law*,
    6 Green Bag 2d 379 (2003) ..................................................................... 17

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
_____

Docket No. 18-2225
_____

UNITED STATES OF AMERICA,

Appellee,
-against-

WILLIAM MINGO,

Defendant-Appellant.

_____
APPEAL FROM A JUDGMENT
OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

BRIEF FOR APPELLANT WILLIAM MINGO
_____

## Statement of Jurisdiction

This is an appeal from a final judgment rendered on July 24, 2018, and entered

on July 25, 2018, in the United States District Court for the Southern District of New

York (Hon. Alvin K. Hellerstein), convicting appellant of failure to register as a sex

offender. A notice of appeal was timely filed on July 26, 2018. This Court has

jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The district court

had jurisdiction pursuant to 18 U.S.C. § 3231.

# Questions Presented

1. Whether 34 U.S.C. § 20913(d) a provision of the Sex Offender Registration and Notification Act ("SORNA"), violates the constitutional nondelegation doctrine by authorizing the Attorney General to make SORNA applicable to people convicted of their underlying sex offense before SORNA took effect on July 27, 2006? The Supreme Court of the United States granted certiorari to decide this issue and heard oral argument on October 2, 2018. *See Gundy v. United States*, 138 S. Ct. 1260 (Mar. 5, 2018) (No. 17–6086).

2. Whether 34 U.S.C. § 16911(5)(A)(iv) of SORNA violates the constitutional non-delegation doctrine by authorizing the Secretary of Defense to decide what military offenses are covered by SORNA?

3. Whether the promulgation of Enclosure 27, which lists the military offenses covered by SORNA, violated the Administrative Procedures Act by failing to follow notice and comment requirements?

## Statement of the Case

William Mingo was convicted pursuant to a guilty plea of failure to register as a sex offender, in violation of 18 U.S.C. § 2250. On July 24, 2018, the court sentenced him to time served and five years of supervised release. This Court continued the appointment of the Federal Defenders of New York as counsel on appeal under the Criminal Justice Act.

Introduction

On January 26, 2006, William Mingo was convicted by court-martial in the Military District of Washington of one count of rape, sentenced to 30 months'

confinement, and discharged from the Army. In the instant case, Mr. Mingo pleaded guilty to a failure to register as a sex offender. He signed a conditional plea agreement allowing him to appeal his motion to dismiss the indictment because Congress unconstitutionally delegated to the Secretary of Defense authority to decide what military offenses were SORNA applicable, and because Enclosure 27, which lists the military offenses the Secretary decided were SORNA-applicable was promulgated in violation of the APA.

Additionally, after the plea was accepted, the Supreme Court granted certiorari in *Gundy v. United States*, 138 S. Ct. 1260 (Mar. 5, 2018) (No. 17–6086), which will address a related question: whether Congress unconstitutionally delegated to the Attorney General the authority to make SORNA applicable to people like Mr. Mingo who were convicted of their underlying sex offense before SORNA's enactment. While this Court has held that this delegation does not violate the Constitution, *see United States v. Guzman*, 591 F.3d 83, 91–93 (2d Cir. 2010), *Gundy* may hold to the contrary. Mr. Mingo therefore appeals his conviction on this ground to preserve his rights in the event *Gundy* holds SORNA's delegation to the Attorney General unconstitutional.

<u>Motion to dismiss</u>

On October 26, 2017, Mr. Mingo filed a motion to dismiss the indictment for failing to register as a sex offender, in violation of the Sex Offender

Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250(a). He raised two arguments: first, that the statute violated the constitutional separation of powers and the non-delegation doctrine, by endowing the Secretary with legislative authority to define which military crimes constitute "sex offenses" giving rise to SORNA liability under federal criminal law without any intelligible limiting principle. Second, that the Secretary of Defense promulgated Enclosure 27, which lists the SORNA-applicable military offenses, in violation of the Administrative Procedure Act by failing to follow notice and comment rulemaking procedures.

In response, the government argued that the court could simply look to the ordinary definition of "sex offense" in SORNA, and that the delegation was, therefore, narrow. Dkt. 26.[1] With respect to Enclosure 27, the government argued, *inter alia*, that it was exempt from notice and comment because it concerned a "military function" of the United States. *See* 5 U.S.C. § 553(a)(1). The government asserted that "[f]ew issues are more central to military function than the ability of the military hierarchy to exercise control over military disciplinary matters." Dkt. 26.

In an order filed November 30, 2017, the district court rejected the defense motion. The court found that there was an "intelligible principle" limiting the

---

[1] Citations to "A" numbers refer to pages in appellant's appendix. Citations to the "Dkt" refer to documents filed on the ECF docket for Case No. 16-cr-597.

Secretary's authority by concluding that the definition of "sex offense" in 20911(5)(A)(i), "a criminal offense that has an element involving a sexual act or sexual contact," also limited the Secretary's discretion when deciding which military offenses were sex offenses. A. 17. The court also found that the purpose of SORNA to "protect the public from sex offenders and offenders against children" was limiting. A. 17.

With respect to Enclosure 27, the court ruled that this regulation was not subject to the APA's notice and comment requirements because it is "exempt" under the "military affairs exception." A. 19, citing *Zhang v. Slattery*, 55 F.3d 732, 744 (2d Cir 1995) ("The notice and comment provisions of the APA are inapplicable to rules involving a military or foreign affairs function of the United States,' § 553(a)(1), presumably to avoid the public airing of matters that might enflame or embarrass relations with other countries."). The court admitted that there were no cases where the military affairs exception was invoked to support this provision, and that the exception is "either rarely challenged at all, or rarely invoked by the government in the first place." A. 21, citing *Indep. Guard Ass'n of Nevada, Local No. 1 v. O'Leary on Behalf of U.S. Dep't of Energy*, 57 F.3d 766, 770 (9th Cir. 1994) (the exception "can only be invoked where the activities being regulated directly involve a military function"); *United States v. Ventura-Melendez*, 321 F.3d 230 (1st Cir. 2003) (establishing a "temporary security zone" to keep civilians

away from an area near a military bombing range met the exception).

The district court nonetheless concluded that Mr. Mingo's case "falls within the military affairs exception" because he was convicted in a military tribunal which was "part and parcel of the military justice system." A. 21. The court stated that the "efficient functioning of military tribunals depends on the commitment of civilian courts to respect and uphold their work." A. 22. The court admitted that it was "true that SORNA also applies outside of the military context and directly involves only an offender's registration obligations," but concluded that "entrusting this determination to the Secretary of Defense, and placing it outside of the APA's notice and comment requirements, ensures that the military maintains control of its tribunal process and its effect on the community." A. 22

The court denied the motion entirely.

<u>Conditional guilty plea and sentencing</u>

On December 14, 2017, Mr. Mingo pleaded guilty to an indictment charging him with a single count of violating SORNA. He did so pursuant to a conditional plea agreement, which reserved Mr. Mingo's right to appeal the district court's order denying his motion to dismiss the indictment. A. 40

At the plea proceeding, Mr. Mingo stated that he was 39 years old and a United States citizen. A. 26. He had an associate's degree. A. 26. He had never been treated for drug addiction or mental illness. A. 27. The court explained to him his

rights, including that he had a right to a speedy and public jury trial, that he would be presumed innocent at that trial, and that the government would have to prove his guilt beyond a reasonable doubt. A. 28-29. The court explained that he would have the right to a lawyer at that trial and that his lawyer could present evidence on his behalf and cross-examine the government's witnesses. A. 29-30. The court told him that he would have the right to testify in his defense if he so desired. A. 30. Mr. Mingo indicated that he understood the rights he was giving up in pleading guilty. A. 28-29.

The court explained that the maximum term of imprisonment for the charge was 10 years, which could be followed by a lifetime of supervised release. A. 33. The plea agreement indicated that the guideline range for his conviction was 15 to 21 months imprisonment. A. 35. Mr. Mingo told the court that he had failed to register and was pleading guilty. A. 42. The government indicated that Mr. Mingo had been convicted under the Uniform Code of Military Justice, Article 120, which had been designated by the Secretary of Defense as a SORNA sex offense. A. 45.

At the time of sentencing, Mr. Mingo had already served three and a half months in prison and the court sentenced him to time served and 5 years of supervised release.

## Summary of Argument

The non-delegation doctrine, is "'rooted in the principle of separation of powers that underlies our tripartite system of Government,' and stipulates that 'Congress generally cannot delegate its legislative power to another Branch.'" *United States v. Stevens*, 578 F. Supp. 2d 172, 182 (D. Me. 2008) (quoting *Mistretta v. United States*, 488 U.S. 361, 371–72 (1989)). Although Congress may in certain circumstances delegate its legislative authority, it may only do so if it "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928); *see also Mistretta*, 488 U.S. at 375-77 (the "separation-of-powers inquiry [ ] focus[es] on the extent to which [a provision of law] prevents [a] Branch from accomplishing its constitutionally assigned functions").

1.     The Supreme Court held in *Reynolds v. United States*, 565 U.S. 432, 445 (2012), that SORNA does not apply of its own force to people convicted of a sex offense before SORNA's enactment in July 2006. Rather, Congress, in what is now 34 U.S.C. § 20913(d), delegated to the Attorney General the authority to make SORNA applicable to people convicted of a sex offense before SORNA's enactment, which the Attorney General purported to do by issuing rules and regulations to that effect in 2007. The *Reynolds* Court expressly left open whether this delegation violates the constitutional separation of powers, as embodied in the nondelegation doctrine. 565

U.S. at 441. That question is presented in *Gundy*. If *Gundy* holds that the delegation to the Attorney General in 34 U.S.C. § 20913(d) is unconstitutional, it would mean that SORNA never became applicable people like Mr. Mingo, whose sex offenses occurred before SORNA's enactment, because the Attorney General was not properly granted the authority to make SORNA applicable to them. In other words, if *Gundy* strikes down § 20913(d), then Mr. Mingo was not "required to register" under SORNA, 18 U.S.C. § 2250(a)(1), and would not be guilty of violating SORNA for failing to register.

2.     Similarly, section 16911(5)(A)(iv) provides that the "Secretary of Defense shall specify" the military offenses that constitute "sex offense[s]" giving rise to SORNA liability. Pursuant to this authority, the Secretary promulgated Enclosure 27, which specified which offenses under the Uniform Code of Military Justice trigger SORNA requirements. In delegating to the Secretary the authority to define what constitutes a "sex offense" (and, by extension, a SORNA violation), Congress violated the non-delegation doctrine by giving the executive branch the legislative power to define the element of a crime without articulating any "intelligible principle" to do so.

3.     Even if the Court concludes that Enclosure 27 was promulgated pursuant to a valid delegation of power, Mr. Mingo's conviction should still be reversed and vacated because the rule was issued in violation of the Administrative Procedure Act.

# ARGUMENT

## Point I

### If *Gundy* strikes down 34 U.S.C. § 20913(d), this Court should reverse Mr. Mingo's conviction and remand for dismissal of the charging instrument.

A.  <u>Standard of review</u>

This Court reviews a preserved challenge to the constitutionality of a statute de novo. *E.g.*, *United States v. Pettus*, 303 F.3d 480, 483 (2d Cir. 2002); *United States v. Murphy*, 979 F.2d 287, 289 (2d Cir. 1992). As shown below, a favorable ruling for the petitioner in *Gundy* would establish that SORNA does not apply to pre-Act convictions, and that the district court therefore erred by rejecting Mr. Mingo's motion to dismiss. Accordingly, his conviction should be reversed.

B.  <u>If *Gundy* strikes down 34 U.S.C. § 20913(d), Mr. Mingo's conviction should be reversed.</u>

The petitioner in *Gundy* argues that 34 U.S.C. § 20913(d) violates the nondelegation doctrine by improperly transferring to the Attorney General, without adequate guidance, a power that is quintessentially and exclusively "legislative," U.S. Const. art. I, § 1 – specifically, the power to make SORNA's registration requirements and criminal penalties applicable to people convicted of a sex offense before SORNA's enactment. If the Supreme Court agrees, the holding in *Gundy* would establish that Mr. Mingo's conviction should be reversed as plain error.

The framework for plain-error analysis is the four-pronged test set forth in *United States v. Olano*, 507 U.S. 725, 732 (1993). Under that test, there must be (1) "error," (2) that is "plain," and (3) that "affects substantial rights." If all three conditions are met, this Court may correct the error if (4) it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

All four *Olano* prongs would be satisfied here if *Gundy* strikes down 34 U.S.C. § 20913(d). First, there would be "error" in accepting Mr. Mingo's plea, because the *Gundy* decision would apply to all criminal cases pending on direct review, including this one. *See, e.g.*, *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987) ("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final . . . ."); *see also Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) (when the Supreme "Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review").

The error would also be "plain." An error is "plain" if it is "clear or obvious … at the time of appellate review." *United States v. Folkes*, 622 F.3d 152, 158 (2d Cir. 2010) (per curiam). A decision in *Gundy* invalidating 34 U.S.C. § 20913(d) would make it "clear or obvious" at the time of this appeal that SORNA does not apply to Mr. Mingo's pre-Act conviction.

The remaining prongs of plain-error analysis would also be satisfied. First,

the error—accepting Mr. Mingo's guilty plea to a federal crime he did not in fact commit—would prejudice him and thus "affect [his] substantial rights." *Olano,* 507 U.S. at 732. And allowing his wrongful conviction to stand would seriously undermine the "fairness, integrity, or public reputation of judicial proceedings." *See id.* at 736 (a "court of appeals should no doubt correct a plain forfeited error that causes the conviction or sentencing of an actually innocent defendant"); *United States v. Garcia,* 587 F.3d 509, 521 (2d Cir. 2009) (exercising discretion to vacate guilty plea for plain error where defendant was convicted and sentenced for "an offense of which there is a substantial possibility he is not guilty").

In sum, if *Gundy* holds 34 U.S.C. § 20913(d) unconstitutional, it would mean the district court committed plain error in accepting Mr. Mingo's guilty plea because there would be no factual basis for it—indeed, Mr. Mingo would not be guilty of violating SORNA. In that event, this Court should reverse Mr. Mingo's conviction and remand for dismissal of the charging instrument

## Point II

### 34 U.S.C. § 16911(5)(A)(iv) violates Art. I, § 1 of the Constitution and the non-delegation doctrine.

Mr. Mingo's military offense conviction, falls under SORNA through section 16911(5)(A)(iv), which provides that the "Secretary of Defense shall specify" the military offenses that constitute SORNA "sex offense[s]." Pursuant to this authority, the Secretary promulgated Enclosure 27, which specified the military

offenses that required SORNA registration. In delegating to the Secretary the authority to define what constitutes a "sex offense," Congress violated the non-delegation doctrine by giving the executive branch the legislative power to define the element of a crime without an "intelligible principle." Absent such a principle, the Secretary was left with unfettered discretion to legislate. This Court should, therefore, find that section 16911(5)(A)(iv) violates the non-delegation doctrine and vacate Mr. Mingo's SORNA conviction.

Section 16911(5)(A)(iv)'s plain language authorizes the Secretary to legislate by providing that it is the Secretary, rather than Congress, who will determine which military offenses constitute "sex offenses" and, as a result, SORNA violations. *See* 34 U.S.C. § 16911(5)(A)(iv) ("the term 'sex offense' means . . . a military offense *specified by the Secretary of Defense*") (emphasis added). In other words, the statute gives the Secretary the authority to define one of the key elements of a SORNA offense. *See also* Inspector General, Dept. of Defense, *Evaluation of DoD Compliance with the Sex Offender Registration and Notification Act* 3-4, 43, 47 (2014), http://www.dodig.mil/pubs/documents/DODIG-2014-103.pdf ("Current SORNA legislation . . . require[s] the Department to identify and publish [qualifying military offenses], as set forth in Enclosure 27").

Defining elements of a crime is within the exclusive purview of the legislative, not the executive, branch. *See United States v. Nichols*, 784 F.3d 666, 668 (10th Cir. 2015)

(Gorsuch, J., dissenting) ("If the separation of powers means anything, it must mean that the prosecutor isn't allowed to define the crimes he gets to enforce."). Congress therefore went beyond merely giving the executive branch the "characteristically executive responsibilit[ies]" of "interpreting" and "implementing" law. *United States v. Sherman*, 784 F. Supp. 2d 618, 621 (W.D.Va 2011). Instead, it gave the executive the authority to "define" an element of a criminal offense and thereby "create" criminal liability. *See Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 809 F.2d 979, 989 (3d Cir. 1986) (the executive branch's function is to "*[i]nterpret[]* a law enacted by Congress to implement the legislative mandate") (emphasis added); *United States v. FMC Corp.*, 717 F.2d 775, 780 n.13 (3d Cir. 1983) (the "legislative function [is] prescribing generally applicable rules" (*i.e.*, "enumeration"); the "executive function [is] enforcing legal norms" (*i.e.*, "implementation")) (citation and internal quotation marks omitted).

The only "guidance" to the Secretary is the plain language of § 16911(5)(A)(iv), *i.e.*, "'sex offense' means . . . a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105-119 (10 § U.S.C. 32 C.F.R. pt. 336 note)." This language does not limit which military offenses the Secretary may deem to be a "sex offense." Indeed, courts have recognized that § 16911(5)(A)(iv) provides the Secretary with unconstrained power to define which military crimes qualify as "sex offenses." *See, e.g., United States v. Torrance*, 72 M.J. 607, 615 (A.F. Ct. Crim. App. 2013) ("Congress directed the

Secretary to 'specify categories of conduct punishable under the Uniform Code of Military Justice which are sex offenses . . . *and such other conduct as the Secretary deems appropriate for inclusion* for [this] purpose[ ].'") (quoting 10 U.S.C. § 951, reviser's note) (emphasis added).

The district court's ruling that there was an "intelligible principle" limiting the Secretary General's authority because of the definition of "sex offense" in 20911(5)(A) is incorrect. The section 20911(5)(A) definition of "sex offenses" explicitly only applies to "criminal offenses." Military offenses are not constrained by that definition. Indeed, the Secretary at one time ruled that "indecent language to a minor" was a military offense that was subject to SORNA even though indecent language to a minor clearly did not meet the Section 20911(5)(A) definition of "sex offense."[2] This indicated that the Secretary felt unrestrained from the definition of criminal offense definitions, which is the most sensible reading of the statute.

Instead, the delegation of authority in § 16911(5)(A)(iv) is much more akin to the delegations of legislative power that the Supreme Court has found to violate the nondelegation doctrine. *See, e.g., Pan. Ref. Co. v. Ryan,* 293 U.S. 388, 430 (1935) (delegation of authority to executive to issue orders regarding transportation of

---

[2] The original list of "sex offenses" (effective until 2009) included violations of the military general offense statute (Article 134) predicated solely upon "indecent language to a minor." *See* DODI 1325.7, Encl. 27; *United States v. Caver,* 41 M.J. 556, 559 (C.C.A. 1994) (calling female a "bitch" constituted using "indecent language" in violation of Article 134). That offense plainly would not qualify as a "sex offense" under Congress's definitions of the element.

petroleum unconstitutional because "Congress [ ] declared no policy, [ ] established no standard, [ ] laid down no rule," *e.g.*, "no requirement, no definition of circumstances and conditions in which the transportation is to be allowed or prohibited"); *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 538-42, 551 (1935) (reversing criminal convictions because statute under which defendants were prosecuted unconstitutionally delegated Congress's legislative authority to executive by "set[ting] up no standards, aside from the statement of the general aims of rehabilitation, correction, and expansion").

In enacting § 16911(5)(A)(iv), Congress "sail[ed] [too] close to the wind with regard to the principle that legislative powers are nondelegable," *United States v. Cooper*, 750 F.3d 263, 272 (3d Cir. 2014), by delegating its authority to "prescribe crimes," *United States v. Moore,* 43 F.3d 568, 571 (11th Cir. 1994), with no intelligible limiting principle. Therefore, the Court should find that § 16911(5)(A)(iv) is unconstitutional, that the rule promulgated by DoD pursuant to this statute (*i.e.*, Enclosure 27) is invalid. Accordingly, this Court should vacate Mr. Mingo's conviction.

## Point III

### By failing to follow notice and comment procedures, the Secretary of Defense passed Enclosure 27 in violation of the Administrative Procedure Act.

The Administrative Procedure Act, 5 U.S.C. § 553, requires administrative agencies "to provide notice of a proposed rule and a public comment period." *See Turner v. Phillips*, 2009 WL 692195, at *2 (N.D.W. Va. Jan. 12, 2009) (citing 5 U.S.C. § 553); *see also Reynolds Metals Co. v. Rumsfeld*, 564 F.2d 663, 669 (4th Cir. 1977) (explaining that, under the APA, agency rules must be published in the Federal Register and subject to prescribed notice-and-comment procedures). The APA applies to "substantive rule[s]," *i.e.*, those that "grant[ ] rights, impose[ ] obligations, or produce[ ] other significant effects on private interests." *White v. Shalala*, 7 F.3d 296, 303 (2d Cir. 1993) ("Since legislative rule-making involves the agency's delegated power to make law through rules, it is subject to the public participation and debate that notice and comment procedures provide."). When an agency fails to comply with the APA's notice and comment procedures in enacting a rule, the rule is invalid.

Enclosure 27, which is the list of military offenses requiring SORNA registration, was issued with no notice and comment procedure as required under the APA. The district court's conclusion that Enclosure 27 was not required to comply with the APA because of a "military function" exception was incorrect. Instead, this Court should vacate Enclosure 27 because of the Secretary's failure to comply with

the APA. *See Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009) ("Failure to provide the required notice and to invite public comment . . . is a fundamental flaw that normally requires vacatur of the rule"); *United States v. Ross*, 848 F.3d 1129, 1131-37 (D.C. Cir. 2017) (dismissing SORNA indictment where rule upon which it was based failed to comply with the APA).

Like most administrative agencies, the Department of Defense ("DoD") is subject to the APA. *See* 5 U.S.C. § 551(1) (defining agencies subject to APA); *see also* 32 C.F.R. § 701.66 (DoD has established a "general policy favoring notice and comment in the development of regulations having a substantial and direct impact on the public, unless a significant and legitimate interest of the Department or the public requires not following that procedure"); Eugene R. Fidell, *Military Commissions & Administrative Law*, 6 Green Bag 2d 379, 385-86 (2003) (discussing DoD notice-and-comment obligations under the APA).

In certain limited circumstances, DoD does not need to follow the APA in issuing rules. For example, the APA does not apply to rules concerning or issued by military commissions, courts-martial, or those promulgated by the military "in the field in time of war or in occupied territory" or which involve a "military [ ] function of the United States." 5 U.S.C. §§ 551(1)(E)-(G); 553(a)(1). And, as is the case for all administrative agencies, "the notice and comment period of the APA does not apply to interpretative rules, general statements of policy, or rules of agency organization,

procedure, or practice." *Turner*, 2009 WL 692195, at *2 (citation and quotation marks omitted).

In Mr. Mingo's case, the district court correctly found that Enclosure 27 is a substantive rule. *See* Kenneth Culp Davis, *Administrative Law Treatise* § 7.10 at 54 (2d ed. 1979) ("[R]ules are legislative [*i.e.*, substantive] when the agency is exercising delegated power to make law through rules, and rules are interpretive when the agency is not exercising such delegated power in issuing them."). This is because Enclosure 27 does not just "clarify an existing statute or regulation," but defines what constitutes a "sex offense." *White*, 7 F.3d at 303. The rule requires an entire class of people to comply with SORNA registration requirements and created criminal liability for the failure to do so.

Contrary to the district court's decision, however, none of the military exceptions to the APA excuse the Secretary's noncompliance. *See* 5 U.S.C. §§ 551(1)(E)-(G), 553(a)(1). In determining whether the agency rule in question involves a "military function" – an exception which is narrow in scope – the Court must first "look not to whether the overall nature of the agency promulgating the regulation is 'civilian' or 'military,' but to the function being regulated." *Indep. Guard Ass'n, Local No. 1 v. O'Leary*, 57 F.3d 766, 769 (9th Cir. 1995) ("Congress intended the military function exception to have a narrow scope."); *see also City of New York v. Permanent Mission of India*, 618 F.3d 172, 201 (2d Cir. 2010) ("exceptions to [section]

553 should be narrowly construed and only reluctantly countenanced"; finding that regulation of the reciprocal treatment to be afforded foreign missions in the United States related directly to foreign affairs). Enclosure 27 does not concern anything that could be characterized as a "military function." *See* 5 U.S.C. § 553 (a)(1).

The "function" regulated here – registration of individuals convicted of certain military offenses – is by no means "military" in nature. On its face, the rule has nothing to do with any type of military activity. It creates affirmative obligations and criminal liability under federal (not military) criminal law by defining one of the key elements of a SORNA violation, *i.e.*, what constitutes a "sex offense." And, the rule applies equally to qualifying civilians and service members alike.

Enclosure 27 is also nothing like the types of rules that courts have found regulate a "military function" and fall outside the ambit of the APA. The two cases cited by the district court only highlight that selecting SORNA offenses is not a military function. In *United States v. Ventura-Melendez*, 321 F.3d 230 (1st Cir. 2003), the First Circuit held that establishing a "temporary security zone" to keep civilians away from an area near a military bombing range met the exception. On the other hand, in *Indep. Guard Ass'n Local No. 1*, 57 F.3d at 769-70, the Ninth Circuit stated that "[Department of Energy] engages in a military function when it researches and develops nuclear weapons" but concluded that the civilian security guards at nuclear facility do not exercise a "military function." Thus, rules concerning the nuclear

security guards must be issued in compliance with the APA. *Id.* The Secretary's decision about what military offenses qualify for a SORNA, a criminal offense that has nothing do with military affairs, has much less to do with the military than the rules for security guards at military nuclear facilities, which still requires APA rule-making.

Indeed, the district court seemed to recognize that these cases did not support its conclusion, saying that the "military function" exception is "either rarely challenged at all, or rarely invoked by the government in the first place." The district court's rationale for nonetheless concluding that Mr. Mingo's case "falls within the military affairs exception" did not have any support in the case law. While the court made some vague remarks that the military courts are "part and parcel of the military justice system" and the "efficient functioning of military tribunals depends on the commitment of civilian courts to respect and uphold their work," it admitted that SORNA also "applies outside of the military context and directly involves only an offender's registration obligations." What military offenses are designated under SORNA has no relevance to the military court's effective functioning, nor will those courts function any less effectively if APA procedures are followed for SORNA. Indeed, many if not all of the people with SORNA-qualifying military offenses will, like Mr. Mingo, have already been discharged from the military because of the

offense. The military function exception simply does not apply.[3]

Accordingly, the APA's "military" exceptions do not excuse the Secretary's failure to comply with the APA. Due to that violation, Enclosure 27 was promulgated unlawfully and cannot form the basis of Mr. Mingo's conviction. *See City Club of New York v. United States Army Corps of Eng'rs*, 246 F. Supp. 3d 860 (absent "rare circumstances," "the general rule [is] that vacatur is the appropriate remedy when an agency violates its obligations under the APA") (citation omitted); *see, e.g., Ross*, 848 F.3d 1129. Therefore, the conviction should be vacated and the indictment dismissed.

## Conclusion

If *Gundy* holds that 34 U.S.C. § 20913(d) is unconstitutional, this Court should vacate Mr. Mingo's conviction. Alternatively, this Court should find that section 16911(5)(A)(iv) is unconstitutional and that Enclosure 27 was promulgated in violation of the APA. Accordingly, this Court should vacate Mr. Mingo's conviction and dismiss the indictment.

---

[3] Although not relied on by the district court, the other "military" exceptions to the APA, 5 U.S.C. §§ 551(1)(F)-(G), are similarly inapplicable. Enclosure 27 rule was not issued by, or during, a military commission or court-martial. *See, e.g., Doe v. Rumsfeld*, 297 F. Supp. 2d 119, 129 (D.D.C. 2003) (section 551(1)(F)'s exception for courts-martial and military commissions "inapplicable" where court was not asked "to review a court martial or military commission proceeding[ ]"). Nor was Enclosure 27 promulgated by the military "in the field in time of war or in occupied territory." 5 U.S.C. § 551(1)(G). Rather, it was issued by the Secretary in peacetime, and applies equally to current service members and former service members. *See Doe*, 297 F. Supp. 2d at 129 (section 551(1)(G) did not excuse DoD's failure to comply with APA in issuing rule requiring service members and civilian contract employees to receive anthrax vaccinations).

Respectfully submitted,

_____

Allegra Glashausser
Federal Defenders of New York, Inc.
    Appeals Bureau
52 Duane Street, 10th Floor
New York, New York 10007
allegra_glashausser@fd.org
(212) 417-8739

*Counsel for Defendant-Appellant*
   *William Mingo*

---

**Certificate of Service**

I certify that a copy of this Brief has been served by CM/ECF electronic filing

on the United States Attorney/S.D.N.Y.; Attention: **NATHAN REHN**, Assistant

United States Attorney, 1 St. Andrews Plaza, New York, New York 10007.


Dated: New York, New York
        November 26, 2018


_Allegra Glashausser_
Allegra Glashausser