# 18-2225-cr

_____
_____

United States Court of Appeals
For the Second Circuit
_____

Docket No. 18-2225
_____

UNITED STATES OF AMERICA,

*Appellee,*

-against-

WILLIAM MINGO,

*Defendant-Appellant.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

**REPLY BRIEF FOR DEFENDANT-APPELLANT WILLIAM MINGO**
_____

Federal Defenders of New York, Inc.
Appeals Bureau
52 Duane Street, 10th Floor
New York, New York 10007
(212) 417-8742
allegra_glashausser@fd.org

*Counsel for Defendant-Appellant*
*William Mingo*

Allegra Glashausser
*Of Counsel*

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Preliminary Statement .............................................................................................. 1

Point I

    Although the Supreme Court upheld 34 USC § 20913(d) in *Gundy v. United States*, a petition for rehearing is pending, and this Court should wait until that petition is decided to rule on this Point. .................................................................. 1

Point II

    SORNA's delegation to the Secretary of Defense to decide what military offenses fall within SORNA does not have a sufficient intelligible principle. .... 2

        A. The government is wrong that the definition of "criminal offense[s]" includes military offenses, particularly when there is a separate definition of "military offenses" in the same section of SORNA ............................... 3

        B. The definition of "military offenses" does not include an intelligible principle. ............................................................................................................ 4

Point III

    The passage of Enclosure 27 without notice and comment violates the Administrative Procedures Act, and the "military affairs" exception does not apply .................................................................................................................... 7

Conclusion ............................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*F.C.C. v. Pacifica Found.*,
 438 U.S. 726 (1978) .................................................................................. 5

*Gundy v. United States*,
 139 S. Ct. 2116 (2019) ............................................................................... 1

*Indep. Guard Ass'n v. O'Leary*,
 57 F.3d 766 (9th Cir. 1995) ..................................................................... 10

*Loving v. United States*,
 517 U.S. 748 (1996) .................................................................................. 6

*Rajah v. Mukasey*,
 544 F.3d 427 (2d Cir. 2008) ................................................................. 8, 9

*Reno v. Am. Civil Liberties Union*,
 521 U.S. 844 (1997) .................................................................................. 5

*United States v. Guzman*,
 591 F.3d 83 (2d Cir. 2010) ....................................................................... 6

*United States v. Kebodeaux*,
 570 U.S. 387 (2013) .................................................................................. 9

*United States v. Ventura-Melendez*,
 321 F.3d 230 (1st Cir. 2003) .................................................................. 10

*Villanueva v. United States*,
 893 F.3d 123 (2d Cir. 2018) ..................................................................... 6

**Statutes**

34 U.S.C. § 20913 ............................................................................................ 1

34 U.S.C. § 20911 ............................................................................. 3, 4, 7, 11

**Preliminary Statement**

This brief is submitted in reply to the government's brief, which was filed on August 14, 2019, following a stay pending the Supreme Court decision in *Gundy v. United States*, 139 S. Ct. 2116 (2019). Appellant's main brief was filed on November 26, 2018.

**Point I**

**Although the Supreme Court upheld 34 USC § 20913(d) in *Gundy v. United States*, a petition for rehearing is pending, and this Court should wait until that petition is decided to rule on this Point.**

In his main brief, William Mingo argued that if the Supreme Court struck down 34 U.S.C. § 20913(d), that Mr. Mingo's conviction should also be reversed. The government is correct that the Supreme Court upheld 34 U.S.C. § 20913(d) in *Gundy v. United States*, 139 S. Ct. 2116 (2019). Nevertheless, *Gundy* is not yet final. *Gundy* filed a timely petition for rehearing on July 11, 2019, requesting review by the full nine-member Court, which the Supreme Court has not yet decided. Accordingly, Mr. Mingo respectfully requests that this Court await resolution of *Gundy's* rehearing petition before deciding the Mr. Mingo's appeal on Point I.

## Point II

**SORNA's delegation to the Secretary of Defense to decide what military offenses fall within SORNA does not have a sufficient intelligible principle.**

In Mr. Mingo's main brief he argued that the section of SORNA that provides that the "Secretary of Defense shall specify" the military offenses that constitute SORNA "sex offense[s]" violates the non-delegation doctrine because it does not provide an intelligible principle about which military offenses should be so designated. Def. Br. 12-16. In response, the government first asks the Court to ignore the part of the statute challenged by Mr. Mingo and instead focus on a different portion that defines "criminal offenses," rather than military offenses. Gov. Res. 8. This argument essentially asks the Court to treat the section defining "military offenses" as mere surplusage, in violation of settled rules of statutory construction, and should therefore be rejected. Second, the government admits that the section specifically relating to military offenses is not as "limited," Gov. Res. 12, but, nonetheless, argues that the section "easily passes constitutional muster," considering the "surrounding statutory context, and purpose." Gov. Res. 6. Because the delegation to the Secretary to choose what military offenses are sex offenses has essentially no limitation, this Court should reject the government's argument.

A. <u>The government is wrong that the definition of "criminal offense[s]" includes military offenses, particularly when there is a separate definition of "military offenses" in the same section of SORNA.</u>

The government argues that this Court should ignore the definition of "military offenses" and instead focus on Section 20911(5)(A)(i), which defines a sex offense as any "criminal offense that has an element involving a sexual act or sexual contact with another." Gov. Res. 8-13. The government says there "is not even an arguable nondelegation challenge to [the Section 20911(5)(A)(i)] provision of SORNA" and that the definition of "criminal offense" "applies to [Mr.] Mingo's prior conviction" because the definition of "criminal offense" "authorizes the Secretary to designate the military offense of rape under the definitions of 'sex offense' and 'criminal offense.'" Gov. Res. 6. The Court should reject this argument.

The government states that according to the definition of "criminal offense" in Section 20911(5)(A)(i), the Secretary can designate military offenses as sex offenses "as that term is defined in the [SORNA], and <u>such other conduct as the Secretary deems appropriate for inclusion for purposes of this subparagraph</u>." Gov. Res. 9, citing Public Law 105-119 (emphasis added). Even accepting the government's argument that military offenses fall within the definition of "criminal offense[s]," this delegation is no more limited than the definition of "military offenses" in SORNA itself. In making the contrary argument, the government simply ignores the portion of the Public Law stating that the Secretary can designate "any other conduct" that is not included in SORNA, if the Secretary "deems [it] appropriate." Given this catch-all

3

provision allowing the Secretary to include additional offenses that do not fall within the definition of sex offense in SORNA, this provision is no more limited than the one Mr. Mingo challenges. Ignoring the catch-all provision, the government just asserts that the Secretary's authority is "highly circumscribed" by the term "sex offense." Gov. Res. 11.

In any event, the government is also wrong to focus on Section 20911(5)(A)(i) given that "military offenses" are explicitly defined in Section 20911(5)(A)(iv). There would be no reason for Congress to have included a definition of "military offenses" in the SORNA statute itself if it intended military offenses to be subsumed in the phrase "criminal offenses."

> B. <u>The definition of "military offenses" does not include an intelligible principle.</u>

The government also argues that the definition of "military offenses" as any offenses the Secretary designates is constitutional because when the "full statute is considered" "it provides an intelligible principle" from the "detailed declaration of its purpose" to "protect the public from sex offenders." Gov. Res. 15. It claims that it would be "surprising for Congress to learn that it had authorized the Secretary to designate as 'sexual offense[s]' military offense wholly unrelated to the Congressional definition of 'sexual offense,'" Gov. Res. 18, and that the "other highly specific definitions of 'sex offense' provided in the statute" limit the Secretary. Gov. Res. 17.

4

But, as discussed above, the definition of sex offense and criminal offense do not limit the Secretary in designating military offenses.

In support of its position, the government addresses the Secretary's past decision to rule that "indecent language" to a minor was a SORNA offense, by stating that "indecent language" meets the definition of a sex offense under the criminal law. Gov. Res. 20 n.5. The government says that the use of indecent language is "not materially different from crimes against minors that Congress" designated, mentioning "solicitation to engage in sexual conduct." Gov. Res. 20-21 n.5. It is puzzling that the government believes that solicitation to engage in sexual conduct is the same thing as the use of "indecent language," an ever-changing standard which has bedeviled First Amendment law for decades. *See, e.g., Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 877 (1997) ("The general, undefined terms "indecent" and "patently offensive" cover large amounts of nonpornographic material with serious educational or other value."); *F.C.C. v. Pacifica Found.*, 438 U.S. 726, 740 (1978) (noting that "the normal definition of "indecent" merely refers to nonconformance with accepted standards of morality"). There is no justification for the government to assert that the use of indecent language is the same as the solicitation of a minor for sex. Instead, that the Secretary previously designated the use of indecent language as a sex offense only shows how unlimited the Secretary's authority is under the statute.

The government next points to a footnote in *United States v. Guzman*, 591 F.3d 83, 93 n.3 (2d Cir. 2010), stating that, although the parties had not challenged the "broadest grant of authority in [SORNA] – a provision that directs the Attorney General to "issue guidelines and regulations to interpret and implement" SORNA, that provision would not change the Court's analysis. Gov. Res. 18. The government suggests that this footnote in *Guzman* forecloses Mr. Mingo's argument because by "implication, there is no nondelegation problem with the various narrower delegations in SORNA, including the provision authorizing the Secretary of Defense to determine the military offenses that constitute sex offenses." Gov. Res. 18. *Guzman* did not decide the issue raised here as the *Guzman* Court did not consider military offenses at all. Issues not called to the Court's attention are not considered as having been decided. *Villanueva v. United States*, 893 F.3d 123, 131 (2d Cir. 2018). ("Questions which merely lurk in the record neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."), quoting *Webster v. Fall,* 266 U.S. 507, 511 (1925).

Finally, the government states without explanation that it is "wrong" to say that the Secretary "define[s] an element" of a criminal offense in deciding what military offenses fall within SORNA registration requirements. Gov. Res. 19, citing *Loving v. United States*, 517 U.S. 748 (1996). But *Loving*, which involved a court-martial proceeding, did not allow the Secretary of Defense to define an element of a civilian

6

criminal law and indeed did not relate to a civilian criminal law. The government does not dispute that, here, the Secretary determines which military offenders are sex offenders, and, therefore, decides who is required to register, a key element of the crime of failure to register. Although the government says that this type of statute is "far from unusual," Gov. Res. 19, it does not point to any other criminal statutes that allow the Secretary of Defense to define an element in this manner.

Because Section 20911(5)(A)(iv) gives the Secretary of Defense discretion to define an element of the SORNA statute without any intelligible limiting principle, this Court should hold that the provision is unconstitutional.

## Point III

**The passage of Enclosure 27 without notice and comment violates the Administrative Procedures Act, and the "military affairs" exception does not apply.**

In his main brief, Mr. Mingo argued that the passage of Enclosure 27, which is the list of military offenses that are subject to SORNA, without notice and comment violated the Administrative Procedure Act ("APA"). Def. Br. 17-22. Although the government admits that, in general, "exceptions" to notice and comment should be "narrowly construed and only reluctantly countenanced," it nonetheless claims that the military exception to notice and comment applies because the list of military offenses subject to SORNA is "central" to the function of the military. Gov. Res. 22. In support of this argument, the government asserts that the regulation relates

"directly to and has clear consequences for" the military, Gov. Res. 22, and repeats – without elaboration – that the designation of sex offenses is "part and parcel of the administration of the military justice system." Gov. Res. 25. This Court should reject the government's argument, which is unsupported by any similar cases.

The government essentially argues that anything that affects the military in any way falls under the military affairs exception, failing even to recognize that the Department of Defense is explicitly subject to APA, just like other administrative agencies. The government does not explain why the SORNA regulation, which is a civilian registration requirement separate from the military justice system, is at all essential to military functions. Instead, it just makes sweeping pronouncements, such as "[f]ew issues are more central to military function than the ability of the military hierarchy to exercise control over military disciplinary matters," Gov. Res. 22, and that the SORNA regulation "clearly and directly" involves military affairs, just as "the regulation of foreign diplomatic missions" involves foreign affairs. Gov. Res. 25. However, it offers no examples of how SORNA "clear and directly" affects the military justice system. Contrary to the government's assertions, SORNA does not directly affect the military justice system, which will continue to function effectively regardless of the outcome of this case.

In support of its argument, the government cites *Rajah v. Mukasey*, 544 F.3d 427, 437 (2d Cir. 2008), in which this Court ruled that the foreign affairs exception to

notice and comment applied to a fingerprinting and deportation program started in response to the September 11 terrorist attacks. The Court found that international terrorism, among other foreign policy concerns, justified the exception, noting that for the exception to apply, the public rulemaking provisions should provoke "undesirable international consequences." *Id.* What military offenses fall within SORNA surely has no international consequences and is nothing like *Rajah*.

Next, the government argues that because the "Military Regulation Clause of the Constitution" grants "congress the power to 'make Rules for the … Regulation of the land and naval Forces" that SORNA involves a military function. Gov. Res. 23, 24, citing *United States v. Kebodeaux*, 570 U.S. 387 (2013). But neither the *Kebodeaux* majority nor Chief Justice Roberts's concurrence has anything to say about the requirements of notice and comment, or the exception for military functions. In *Kebodeaux*, the defendant argued that SORNA did not apply to him as he had not been part of the military for years, but the Supreme Court said that SORNA's predecessor applied to him, and Congress had the authority under the necessary and proper clause to pass SORNA's predecessor. *See Kebodeaux*, 570 U.S. at 389 ("We here must decide whether the Constitution's Necessary and Proper Clause grants Congress the power to enact SORNA's registration requirements and apply them to a federal offender who had completed his sentence prior to the time of SORNA's enactment). *Kebodeaux* is not relevant to the issues raised here.

The government also cites *United States v. Ventura-Melendez*, 321 F.3d 230, 233 (1st Cir. 2003), which similarly does not advance its argument. In *Ventura-Melendez*, the military rule created "a temporary security zone comprised of a combined area of ocean and land adjacent to a bombing range at a military installation." *Id.* The First Circuit wrote that, a "rule designed to render safe and feasible the performance of a military function by preventing interference on the part of civilians necessarily serves a military function as well as a civilian one." *Id.* The list of military offenses that fall under SORNA is nothing like a "security zone" that is near a "bombing range" in terms of the direct consequences on military affairs. Instead, this situation is more akin to *Indep. Guard Ass'n v. O'Leary*, 57 F.3d 766 (9th Cir. 1995), in which the Ninth Circuit held that the military function exception did not apply to a regulation governing security guards at a nuclear plant. Although the regulation affected people who worked at a military facility, the court still found notice and comment was required as the regulation of the civilian guards did not directly affect military affairs. The same is true here.

This Court should, therefore, hold that the narrow military exception does not apply here and that Enclosure 27 was promulgated unlawfully.

## Conclusion

For the reasons explained above and in Mr. Mingo's main brief, this Court this Court should rule that section 20911 (5)(A)(iv) is unconstitutional and that Enclosure 27 was promulgated in violation of the APA. Accordingly, this Court should vacate Mr. Mingo's conviction and dismiss the indictment.

Dated:	Brooklyn, New York
	September 18, 2019

	Respectfully submitted,

	FEDERAL DEFENDERS OF NEW YORK
	APPEALS BUREAU

	_____
	ALLEGRA GLASHAUSSER
	Assistant Federal Defender
	52 Duane Street, 10th Floor
	New York, New York 10007
	Tel.: (212) 417-8739

**Certificate of Service**

I certify that a copy of this Reply Brief has been served by CM/ECF electronic filing on the United States Attorney/S.D.N.Y.; Attention: **NATHAN REHN**, Assistant United States Attorney, One St. Andrews Plaza, New York, New York 11201.

Dated:   Brooklyn, New York
         September 17, 2019

                              *Allegra Glashausser*
                              ALLEGRA GLASHAUSSER